UNITED STATES, Appellee

v.

LEVI SHULER, Private E–2, U. S. Army, Appellant

2 USCMA 611, 10 CMR 109

No. 1599

Decided June 4, 1953

LT COL Herman P. Goebel, Jr., U. S. Army, LT COL James C. Hamilton, U. S. Army, and 1ST LT Levin H. Campbell, III, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, LT COL William R. Ward, U. S. Army, 1ST LT Bernard A. Feuerstein, U. S. Army, and 1ST LT Eugene L. Grimm, U. S. Army, for Appellee.

### Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused, Shuler, was convicted, by general court-martial sitting in Korea, of desertion with intent to remain away from his organization permanently, in violation of the Uniform Code of Military Justice, Article 85(a) (1), 50 USC § 679(a)(1). Petition for review by this Court was granted following approval of the conviction by the convening authority and affirmance by a board of review in the Office of The Judge Advocate General, United States Army.

## II

The only question raised relates to the sufficiency of the evidence to sustain the finding of an intent to remain absent permanently—a necessary element of the offense charged. It is to be observed that the law officer instructed the members of the court-martial fully and fairly concerning the elements of the crime alleged, as well as those of the lesser offense of absence without leave, in violation of the Uniform Code, supra, Article 86, 50 USC § 680. There is, therefore, no instructional problem presented in this case.

Whether the evidence is sufficient to sustain the evident conclusion of the court that the accused left his unit with an intention to remain away therefrom permanently requires a thoughtful analysis of the facts. The existence and extent of the accused's unauthorized absence were established fully through use of a duly authenticated morning report extract copy and by stipulation. The alleged absence extended from March 13 to April 19, 1952, a period of thirty-seven days in length. But a single witness testified at the trial— the accused, himself. The Government rested its case, after introducing the appropriate morning report extract copy, together with the stipulation as to apprehension mentioned earlier. Accused was consistently vague during the course of his testimony, but the following facts are to be gathered from his account. His unit, the Service Company, 35th Infantry Regiment, was, on March 12, 1952, located in the "Punch Bowl" area of Korea. On that date, he was detailed to travel as an assistant driver with a truck to the town of Yong Dong Po, some 108 miles from his station, for the purpose of aiding in the transportation of a quantity of beds. Upon arrival at Yong Dong Po, on March 13, he stated that he left the truck for the purpose of securing treatment at an Air Force dispensary for a "groin rising", asking the driver of the truck to inform their sergeant that he was ill. He reported to the dispensary, he said, and did receive treatment. The doctor who ministered to him re-

quested that he remain at the station for daily medication. He did so—for some fifteen days, in fact, frequenting "the dispensary area" and eating at an Air Force mess. Precisely where he slept was not made clear. At the conclusion of his series of treatments, the accused continued to remain in the neighborhood of Yong Dong Po, stopping and eating with an Air Force friend. Subsequently he was apprehended by military police on April 19, at the Air Force Base's Post Exchange, allegedly while he was en route to surrender himself to the appropriate military authorities. At no time during his absence—apart from the mentioned instruction to the truck driver to report to the sergeant that he was ill—did the accused reveal to any authority that he was absent without leave, nor did he make any attempt whatever to establish contact with his organization. However, he denied entertaining at any time an intention not to return.

## III

Viewing the evidence as a whole, we cannot say that it is insufficient to sustain the findings of guilty returned by the court-martial. As we said in United States v. Peterson (No. 199), 3 CMR 51, decided April 17, 1952, "Rarely, if ever, will the period of unauthorized absence in a desertion case be unaccompanied by other evidential factors. Each sufficiency case rests on its own bottom, and each will be considered individually by this Court." The Government here established a thirty-seven day unauthorized absence terminated by apprehension. Accused would have us hold that an absence for thirty-seven days duration is insufficient in any case—even when terminated by apprehension—to establish an intent not to return. We cannot at all subscribe to so broad a proposition. The duration of the absence, its surrounding circumstances, and the manner of its termination, are all evidentiary factors for the consideration of the triers of fact. The accused's testimonial explanation—even if not, strictly speaking, inherently improbable—was stumbling, inconclusive, and pitted with

612

gaping omissions. Indeed, it was characterized by a quality of dubiety— not to say speciousness—impossible to recreate in the cold pages of this opinion. No single shred of it was corroborated.

The accused has flatly denied that he entertained an intention to desert. In United States v. Ferretti (No. 213), 3 CMR 57, decided April 18, 1952, this Court used the following language, which is repeated here by reason of its applicability to the present problem:

"While the accused denied categorically that he entertained for any moment of time an intention to abandon the service permanently, it does not follow that the members of the court-martial were bound to accept this protestation as conclusive proof, or even as evidence strongly tending to exculpate petitioner. Both the court-martial and the board of review, acting reasonably, were fully authorized to weigh this assertion of Ferretti, together with the remainder of his testimony and, as well, with all other developed facts and proper inferences concerning his absence—this for the purpose of evaluating his credibility on the point in light of the entire evidential picture. Moreover, the triers of fact were permitted to take into account, in weighing his testimony and determining its credit, the deep personal interest which an accused person in a criminal case has in its outcome."

The evidence here—as we see it— simply raised a question of credibility, no more and no less—and the triers of fact, as was their proper province, resolved it against the accused. The court having unmistakably rejected accused's story, we cannot hold that there is, in this record—and as a matter of law—insufficient evidence to sustain their conclusion. Certainly we cannot say, in light of our consideration of the present record, that the evidence did not permit a determination of petitioner's guilt beyond a reasonable doubt and within the fair operation of reasonable minds. United States v. Ferretti, supra. See United States v. Shull (No. 45), 2 CMR 83, decided February 18, 1952.

Accordingly, the decision of the board of review must be affirmed.

Chief Judge QUINN and Judge LATIMER concur.